UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES KAYE,

        Plaintiff,

v.

UNUM GROUP/ PROVIDENT LIFE AND ACCIDENT,

        Defendant.

Case No. 09-14873
Honorable Julian Abele Cook, Jr.

ORDER

This lawsuit arises from a challenge by the Plaintiff, Charles Kaye, to an administrative decision by the Defendant, Unum Group/Provident Life and Accident ("Provident Life") to reject his request for long term benefits under 29 U.S.C. § 1132(a)(1)(B). Kaye had sought to recoup those disability benefits that, in his opinion, are owed to him under the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§ 1001 et seq. The parties have now filed motions for the entries of judgments in their favor on the basis of the administrative record.

I.

Kaye acquired a long term disability insurance policy from Provident Life in July of 1991. This policy provided for a monthly payment for each month in which the insured is "totally disabled."[1] In September of 2005, Kaye filed for benefits, maintaining that he was unable to perform

---

[1]The term, "totally disabled," is defined in the policy as follows: "[d]ue to Injuries or Sickness,

1

his duties as the chief executive officer ("CEO") for his employer. Kaye described his duties as the CEO as "review(ing) all financials," "research(ing) markets," "creat(ing) marketing plans," and "communicat(ing) with customers." (Admin. Rec. 47). In submitting his claim, Kaye expressed the belief that he was suffering from anxiety, depression, bipolar disorder, and migraine headaches. (Admin Rec. 45-49). Dr. Eric Coffman (a family practitioner) and Dr. Theodore Ruza (a psychiatrist) were identified by Kaye as the treating physicians who were familiar with his medical history. (Admin Rec. 51).

In a letter, which bore the date of August 18, 2005, Dr. Ruza described his patient's current medical state in the following manner:

> [Kaye] has had increasing depression and anxiety. He does get frustrated and overwhelmed and is having a hard time coping. He has been angry and irritable. He has had difficulty concentrating and focusing. He has been unable to function on a day-to-day basis. . . . It appears that the patient is disabled from working at the present time. . . .I do feel that with appropriate treatment the patient should be able to return back to his premorbid level of functioning. (Admin. Rec. 70-71).

His letter also noted that Kaye "did not appear to be suffering from any cognitive defects." Thereafter, Dr. Ruza recommended that his patient see Drs. Renee Applebaum and Gerald Sheiner for further testing, diagnosis, and treatment. (Admin. Rec. 71, 78).

As recommended by Dr. Ruza, Kaye consulted with Dr. Applebaum, who performed a series

---

1. you are not able to perform the substantial and material duties of your occupation, and
2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you. (Admin. Rec. 8)

of neuropsychological tests on him on August 29, 2005 and September 6, 2005. (Admin. Rec. 61).

Dr. Applebaum's report stated:

> Mr. Kaye appears to have suffered from a mood disorder, bipolar type on a long term basis and is currently experiencing a major depressive episode. There is evidence of a nonverbal learning disorder. He likely has compensated and been able to succeed as a result of his more strongly developed verbal abilities despite the limitations he has in the nonverbal domain. (Admin. Rec. 67-68).

Dr. Applebaum diagnosed Kaye by utilizing the five Axes of the Diagnostic and Statistical Manual of Mental Disorders:

>
> Axis I:
> 1. 296.52 Bipolar I Disorder with Most Recent Episode Depressed
> 2. Nonverbal Learning Disorder
> 3. Alcohol Abuse
> 4. Polysubstance Abuse by History
>
> Axis II:    R/O 301.81 Narcissistic Personality Disorder
>
> Axis III.:   1. Migraine Headaches
>
> Axis IV:    1.Unemployed/vocational dissatisfaction, financial losses
>
> Axis V;     Current GAF 55.

On the basis of this diagnosis, Dr. Applebaum determined that Kaye was a candidate for psychotherapy and pharmacotherapy. She also concluded that he is "incapable of working at this time, at least until his emotional condition stabilizes." (Admin. Rec. 68).

On November 10, 2005, Provident Life agreed to pay Kaye six months of benefits without requiring him to submit all of the ordinarily requisite medical, financial, and occupational documents needed by the insurance company to fully assess his claim. Both parties had expressed the hope that he would be able to return to work full-time by the end of the six month period.

Dr. Shiener conducted a psychiatric examination of Kaye in January of 2006. (Admin. Rec.

3

78). Prior to conducting his evaluation, Dr. Shiener had received copies of Dr. Ruza's evaluation, a neurological consultation by Dr. Boudouris, and the neuropsychological assessment by Dr. Applebaum. *Id.* Dr. Shiener diagnosed Kaye as follows:

| | |
|---|---|
| <u>Axis I</u>: | Major Depression recurrent; Dysthymia |
| <u>Axis II</u>: | Attention Deficit Disorder; Rule out cyclothymic personality |
| <u>Axis III</u>: | Migraine Headaches<br>Status post polio<br>Hypercholesterolemia |
| <u>Axis IV</u>: | Psychosocial Stressors- Financial Difficulties |
| <u>Axis V</u>: | Highest level of functioning over the past year- Poor (GAF: 31); Highest GAF of prior year- 50. (Admin Rec. 84) |

Dr. Shiener concluded that Kaye "is incapable of working in the capacity of a business consultant or Chief Executive Officer based on his depressive symptomatology and impaired judgment. Given that his response to medications has been so limited, I would recommend that he be managed with the combination of psychotherapy and the judicious use of mood-stabilizing medication." (Admin. Rec. 84-5).

In March of 2006, Kaye informed Provident Life that he would not be able to return to work by the end of June and simultaneously requested the insurer to reopen his disability claim. (Admin. Rec. 975).

Thereafter, Provident Life began requesting and assessing medical documents from Kaye and his treating physicians. Provident Life continued to pay benefits to him. (Admin. Rec. 958). In an effort to process Kaye's claim, Provident Life (1) caused his records to be reviewed by Dr. John Szlyk, a psychiatric consultant for the insurer; (2) made arrangements for two field interviews between Kaye and its representatives; (3) arranged for four independent medical examinations

("IME") of Kaye[2]; (4) requested Dr. Alan Cusher, a Provident Life medical consultant, to review Dr. Clark's IME findings as well as Dr. Applebaum's data; (5) asked Dr. Ursprung, a psychological consultant for Provident Life, to review the data from the testing by Drs. Applebaum and Clark; and (6) retained Drs. Jerry Beaver and Larry Goldman to review all of Kaye's medical records.

On March 22, 2006, Dr. Ruza transmitted an updated report to Provident Life regarding Kaye's treatment and status, in which he wrote "I feel that the patient is suffering from a cyclothymic disorder along with a depressed mood." (Admin. Rec. 405). He concluded by stating that "at the present time I do feel that Mr. Kay (sic) remains disabled from employment." (Admin. Rec. 407).

On June 8, 2006, Kaye applied for Social Security Disability Insurance ("SSDI") benefits. (Admin. Rec. 645). On January 20th of the following year, the Social Security Administration found Kaye to be disabled and eligible to receive SSDI benefits. (Admin. Rec. 2054). Soon thereafter, Provident Life began its own examination of Kaye and his medical records. Dr. Clark conducted the first IME for the insurer in December of 2006. He (1) prepared a psychological evaluation of Kaye based on a personal meeting with Kaye, (2) conducted a series of tests that were administered to Kaye, and (3) reviewed Kaye's neurological, psychiatric, and other medical records. Dr. Clark concluded his evaluation with the following comment: "Kaye would not appear to be suffering from any significant symptoms of psychiatric disorder, despite his claim to be disabled." (Admin. Rec. 216).

Dr. Cardasis prepared the second IME for Provident Life in January of 2007. Similar to the

---

[2]The first was performed by Dr. Charles Clark in December of 2006; the second was performed by Dr. William Cardasis in January of 2007; the third was performed by Dr. Robin Hanks in July of 2008; and, the fourth was performed by Dr. Lucia McPhee in July of 2009.

5

IME process that was employed by Dr. Clark, Dr. Cardasis based his psychiatric evaluation on an in-person interview and Kaye's previous medical records. Dr. Cardasis concluded by noting that "it is my opinion with reasonable medical certainty that Mr Kaye did not meet criteria for an Axis I major mood, anxiety, somalization, or psychotic disorder." (Admin. Rec. 242). He also opined that "[i]n my opinion, Mr. Kaye possessed the capacity to work at the time of this evaluation." (Admin. Rec. 244).

On February 2, 2007 Dr. Szlyk, a medical consultant employed by Provident Life, reviewed Kaye's medical records, along with the reports that had been prepared by Drs. Clark and Cardasis. Dr. Szlyk noted that Kaye's treating physician had continued to treat his patient as being unable to work due to a cyclothmyic disorder, while both of the IME evaluators reached a completely different result; to wit, that Kaye was capable of returning to work. (Admin. Rec. 256). Dr. Szlyk again reviewed Kaye's record and supporting documents after noting the difference in the assessment by Dr. Ruza and those of the two evaluators. (Admin. Rec. 276). Dr. Szlyk, believing that he did not have a sufficient amount of documentation upon which to make a final opinion, recommended to Provident Life that it should (1) obtain further data, (2) secure a further clarification of Kaye's current functioning capabilities, and (3) consider obtaining a neuropsychological IME. *Id.*

On June 1, 2007, Dr. Ruza informed Dr. Szlyk that, in his opinion, Kaye was permanently disabled. (Admin. Rec. 2665). A field interview was performed nearly two weeks later (June 14, 2007) by one of Provident Life's representatives who was told by Kaye that, among other things, his depression and anxiety problems continued to prevent him from working. (Admin. Rec. 848). On August 31, 2007, Dr. Szlyk again reviewed Kaye's file and noted that, notwithstanding his awareness of the contrary IME conclusions, Dr. Ruza continued to consider Kaye as being seriously

6

impaired for any work. (Admin. Rec. 854).

On March 3, 2008, Kaye's claim was referred to Dr. Hanks for additional neuropsychological testing. (Admin. Rec. 2946). On July 8, 2008, she issued her report,[3] which found that Kaye's "symptoms and his level of emotional distress are not high enough to warrant a discontinuation of work or other functional activities." (Admin. Rec. 3115-3116). Significantly, Dr. Hanks did not reach any assessment as to Kaye's cognitive abilities because, in her opinion, "[Kaye] appeared to be giving variable effort and was thought to be engaged in symptom exaggeration." (Admin. Rec. 3112).

In the fall of 2008, Provident Life requested updated records from Kaye's treating health professionals (Admin. Rec. 3211, 3225, 3241, and 3265). The insurer also sought and obtained a copy of Kaye's SSDI results. The Social Security Administration found that Kaye had met the medical requirements for disability benefits - an assessment that was based on reports from August of 2006 by Drs. Ruza and Coffman. (Admin. Rec. 822).

On February 27, 2009, Provident Life officially denied Kaye's claim based, in part, on the findings of the three independent medical doctors, each of whom had determined that he was not disabled and had retained a capacity to work. Kaye filed an appeal on March 30, 2009 and, at the same time, provided Provident Life with an updated statement from Dr. Ruza on May 13, 2009. Drs. Hanks and Malcolm Spica, a neuropsychologist consultant for Provident Life, conducted a review of Dr. Ruza's updated commentary. At the same time, the insurer authorized a fourth IME (performed by Dr. Lucia McPhee) who ultimately determined that Kaye did not have any restrictions

---

[3]Dr. Hanks' report was based on (1) a review of his medical records, (2) a battery of diagnostic tests, and (3) an interview with Kaye.

7

or limitations on his ability to work as a CEO because of any physical or medical conditions. (Admin. Rec. 3744-3755). However, Dr. McPhee's evaluation did not address Kaye's claimed inability to work because of psychiatric conditions. Provident Life also evaluated a vocational assessment by Richard Byard who concluded that Kaye could also perform his duties. Finally, Provident Life, after conducting a second review of Kaye's SSDI award, reaffirmed its original conclusion; namely, that Kaye was fully capable of performing his CEO duties. This second review stated that the "[Provident Life] file contains compelling information about [Kaye's] medical status beyond the information contained in his Social Security file." (Admin. Rec. 3780.)

As a result, Provident Life rejected Kaye's appeal and issued its final denial letter on August 18, 2009. On December 16, 2009 Kaye commenced this lawsuit.

## II.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 155 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." When the administrator or fiduciary retains discretionary authority under the plan, a denial of benefits is reviewed by the Court under the more deferential arbitrary and capricious standard. The Sixth Circuit has consistently required that a plan contain "a *clear* grant of discretion [to the administrator]" in order to be reviewed under the arbitrary and capricious standard. *See, e.g. Wulf v. Quantum Chem. Corp.,* 26 F3d 1368, 1373 (6th Cir.1994); *Hoover v. Provident Life and Accident Ins. Co.,* 290 F.3d 801, 807 (6th Cir.2003).

Provident Life urges the Court to find that the challenged policy contains the requisite clear

8

grant of discretion. Moreover, it notes that the policy, which has been relied upon by Kaye, states that benefits are payable only after the insured submits "proper written proof" of loss. In submitting its argument, Provident Life submits that requiring Kaye to submit "proper written proof" is substantively similar to requiring him to proffer "satisfactory" proof. In support of this argument, Provident Life points to *Perez v. Aetna Life Ins. Co.* 150 F.3d 550, 556-7 (6th Cir.1998), in which the Sixth Circuit held that a policy which required the presentation of "satisfactory" proof vests discretionary authority in the insurer. In *Perez*, the Sixth Circuit concluded that the insurer retained discretionary authority based on the following language: "[The administrator] shall have the right to require as part of the proof of claim satisfactory evidence . . . that [the claimant] has furnished all required proofs of such benefits." *Id.* at 555. The *Perez* court held that "the plan clearly grants discretion to [the administrator] because, under the only reasonable interpretation of the language, [the administrator] retains the authority to determine whether the submitted proof of disability is satisfactory." *Id.* at 557.

However, Kaye argues in his currently pending motion that *Hoover v. Provident Life and Acc. Ins. Co.,* 290 F.3d 801 (6th Cir.2002), contains language which is more analogous to the policy at issue in this case than that in *Perez*. In *Hoover,* the Sixth Circuit held that a policy did not vest discretionary authority in the administrator. *Id.* at 808. In *Hoover,* the policy stated that "[if it] provides for periodic payment for a continuing loss, [the policy holder] must give [the insurance company] written proof of loss." *Id.* at 808. Payment to the insured would be made upon receipt of "proper written proof." *Id.* The Sixth Circuit determined that the requirement "that the insured submit written proof of loss, without more" is insufficient to establish a clear grant of discretion. *Id.* at 808.

9

The language of the policy in Kaye's case is identical to the language at issue in *Hoover*. As adjudged by the *Hoover* court, the language in the policy therein does not grant discretion to the insurer regarding disability determinations. Therefore, this Court will review the administrative decision by Provident Life under a *de novo* standard.

When applying a *de novo* standard in an ERISA claim to review the denial of benefits, the court must determine "whether the administrator or fiduciary made a correct decision." *Perry v. Simplicity Engineering*, 900 F2d. 963, 967 (6th Cir.1990). This review is limited to the administrative record and the court is obligated to determine whether the administrator properly interpreted the plan and if the insured was entitled to benefits under the plan. *Id*.

### III.

Kaye maintains that Provident Life's administrative decision was incorrect. The Court, having reviewed the administrative record, finds that Provident Life properly denied benefits to him. The record indicates that Provident Life's decision was based on extensive evidence from multiple independent examiners who determined that Kaye did not have a disabling condition under the policy's definition.

### A.

Kaye initially contends that Provident Life was operating under an impermissible conflict of interest. A conflict of interest exists where, as here, the same entity (1) determines a party's eligibility for benefits, and (2) is obligated to pay those benefits. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112. When such a conflict of interest exists, the Supreme Court counsels that "[the] conflict should be weighed as a factor in determining whether there is an abuse of discretion." *Metropolitan Life. Ins. Co.* at 155 (internal quotations omitted). The Sixth Circuit cases cited by

10

Kaye, in which a conflict of interest was found to exist and was factored against the insurance company, reflect situations wherein the decisions by the insurance companies were reviewed under the highly deferential arbitrary and capricious standard. However, the Court has found that Provident Life's denial of benefits should be reviewed under a *de novo* standard which gives no deference to the decision by this insurer.[4] Thus, any conflict of interest that may have adversely affected the determination by Provident Life of the claim is not relevant here.

B.

Second, Kaye contends that Provident Life wrongfully and improperly ignored the decision of the Social Security Administration to award disability benefits to him. However, as noted earlier, the Court reviews the administrative record in this case on a de novo basis. Thus, it is irrelevant as to what extent Provident Life did or did not consider the Social Security award.

The Sixth Circuit has held that "a disability determination by the Social Security Administration is relevant in an action to determine the arbitrariness of a decision to terminate benefits under an ERISA plan." *Glenn v. Metlife* 461 F.3d 660, 667 (6th Cir.2006), *aff'd* 554 U.S. 105 (2008). However, the Sixth Circuit has also counseled that "an ERISA plan administrator is not bound by a Social Security Administration disability determination when reviewing a claim for benefits under an ERISA plan." *Whitaker v. Hartford Life & Acc. Ins. Co.*, 404 F.3d 947, 949 (6th Cir.2005). The *Whitaker* court further noted that while Social Security Administration benefits are determined by a uniform set of federal standards, a claim for benefits under an ERISA plan may have an entirely different set of standards.

---

[4] *See, Calvert v. Firstar Finance, Inc.,* 409 F.3d 286 (6th Cir.2005); *Evans v. UnumProvident Corp.*, 434 F.3d 866 (6th Cir.2006); *Marks v. Newcourt Credit Group, Inc.* 342 F.3d 444 (6th Cir.2003).

11

On August 31, 2006, the Social Security Administration asked Dr. Jerry Csokasy to perform a "mental residual functional capacity assessment" of Kaye. (Admin. Rec. 817-820). Dr. Csokasy's assessment fails to identify any examination or diagnostic testing that was conducted by him. Rather, this assessment relies primarily upon the limitations that were reported to him by Kaye. Out of a total of twenty criteria that were used by him upon which to evaluate the patient's cognitive functioning, Dr. Csokasy found that Kaye was "not significantly limited" in sixteen of them. (Admin. Rec. at 817-818). Moreover, Kaye did not have a "marked" limitation in any category of cognitive functioning and suffered "moderate" limitation in only four categories. The Social Security Administration also relied upon (1) the records from Drs. Coffman and Ruza in making its determination. (Admin. Rec. 822), and (2) a report prepared by Dr. Rizzo on October 2, 2006 who concluded that "[Kaye] has a severe mental impairment, but . . . retains the mental ability to perform at least simple, routine, unskilled tasks and activities. He may have difficulty with detailed/complex tasks because of limitations in memory and focus." (Admin. Rec. 829). However, it is not clear from Dr. Rizzo's half page report as to the basis on which he made his findings.

Provident Life conducted two reviews of Kaye's SSDI file. (Admin. Rec 247-49). The first review was conducted on February 26, 2009:

> In the case of SSDI approval, the company must give significant weight to an Social Security Administration award of disability benefits and conclude that the claimant is disabled unless there is compelling evidence to indicate that the SSDI determination is inconsistent with applicable medical evidence.
>
> During the course of adjudicating this claim, we had IMEs performed as follows Psychological Testing (12/2006), Psychiatric IME (1/2007) and a Neuropsychological IME (7/2008) indicating that the claimant's [restrictions and limitations] were not supported on a 'psychiatric' basis. Additionally . . .updated medical information, received since SSDI was approved does not support the claimed [restrictions and limitations] due [to] a psychological and/or medical condition. (Admin Rec. 3555).

The second review of Kaye's SSDI file was performed on August 11, 2009. (Admin. Rec. 3779). Again, this review found that there was compelling evidence which was inconsistent with the SSDI award; namely, that although the SSDI award was based on an application and records received in 2006, Kaye had undergone a more recent series of tests and evaluations, each of which indicated that he was capable of performing the duties of his occupation on a full time basis. (Admin. Rec. 3780).

Although the Court does consider Kaye's SSDI award to be a part of the administrative record, it - standing alone - is an insufficient basis upon which to support a finding that Kaye is totally disabled under the terms of the parties' insurance policy. Most notably, the SSDI determination found that Kaye had suffered limited restrictions in only four categories of cognitive functioning. Furthermore, there are multiple independent evaluations of Kaye that were completed after the award, each of which determined that Kaye was not totally disabled.

C.

Finally, Kaye contends that the medical evidence - when taken in its entirety - supports a finding that he is disabled under the terms of the insurance policy. In particular, he points to the letters and reports from his treating physician, Dr. Ruza. (Admin. Rec. 180-182, 218-220, 405-408, 2665, 2855-60, 3154-55, 3617-20) who found him to be disabled from employment on the basis of his mental condition in August of 2006 - a date which preceded Kaye's first application for benefits from Provident Life. (Admin. Rec. 180-182). Dr. Ruza found him to be suffering from a cylclothmic disorder from August of 2006 through his patient's appeal of the termination of his benefits in April of 2009. (Admin. Rec. 3617). Dr. Ruza had evaluated Kaye as the result of outpatient psychiatric treatment on a weekly basis since August 18, 2005. (Admin. Rec. 3617).

As noted above, Dr. Ruza also sent Kaye for consultations with Drs. Applebaum and Dr.

13

Sheiner. Dr. Applebaum saw Kaye in August and September of 2005 and found that Kaye is "incapable of working at this time, at least until his emotional condition stabilizes." (Admin. Rec. 68). Dr. Shiener conducted a psychiatric examination of Kaye in January 2006 and found that Kaye was "incapable of working in the capacity of a business consultant or Chief Executive Officer based on his depressive symptomatology and impaired judgment." (Admin. Rec. 78, 84-5).

The Supreme Court has held that nothing in ERISA requires the plan administrator to give special deference to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord* 538 U.S. 822, 825 (2003). In particular, the Supreme Court opined that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician. [Moreover, courts may not] impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 834.

After a careful review of the record as a whole, Kaye has failed to present a sufficiency of substantive evidence of his total disability. The primary medical support for Kaye's claim of total disability after January of 2006 comes from his treating physician, Dr. Ruza. Although Drs. Ruza, Shiener and Applebaum collectively concurred that Kaye was totally disabled during the time in which his claim was under evaluation, Provident Life has supplied numerous and more recent medical opinions which support the opposing view point; namely, that he was not totally disabled. Furthermore, Kaye's award of disability benefits under the Social Security program does not require this Court to find likewise. *See, Black & Decker Disability Plan*, 538 U.S. at 832-3.

IV.

For the reasons stated above, Provident Life's motion to affirm the administrative ERISA

decision is granted, (Docket Entry 25)  and Kaye's opposing motion is denied (Docket Entry 17).


      IT IS SO ORDERED.

Date: January 17, 2012
                                              s/Julian Abele Cook, Jr.
                                              JULIAN ABELE COOK, JR.
                                              U.S. District Court Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on January 17, 2012

                                              s/ Kay Doaks
                                              Case Manager